UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edward Leon Muldrow, ) C/A No. 4:12-1003-RBH-TER | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) **REPORT AND RECOMMENDATION** | |
| ) | |
| United States Army, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff, Edward Leon Muldrow, ("Plaintiff"), proceeding *pro se*, brings this civil action against the United States Army, seeking injunctive relief and monetary damages. This matter is before the undersigned United States Magistrate Judge for report and recommendation, following pre-service review pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Plaintiff files this action *in forma pauperis* under 28 U.S.C. § 1915. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be summarily dismissed, without prejudice and without issuance and service of process, because this Court lacks jurisdiction to hear the claims asserted by Plaintiff or to grant the relief that Plaintiff seeks.

## *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995) (en banc); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

This court is required to liberally construe *pro se* complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *id.*; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which

the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## BACKGROUND

Plaintiff, who alleges that he has suffered from amnesia for the past 26 years, files his Complaint, which is a meandering narrative comprised of his fragmentary, yet occasionally vividly detailed, memories of several incidents which allegedly befell him between 1987 and 1989, following his enlistment in the United States Army, in July or August 1986.[1] Plaintiff alleges that:

> [Plaintiff's] memories began to return in 2005, and made their strongest return during May 2011. Usually those memories surface, then fade out again, as soon as [Plaintiff's] mind focus changes to another topic. For some reason, a good bit of memories once lost, and prone to fade-out, have stabilized 25 years after they were damaged.

Statement of Claim, p. 8-of-15; ECF No. 1, p. 11. Plaintiff alleges that, in April 1988, he was stabbed in the head by a woman named Tonya Heaven, with whom he had just broken off a relationship, after discovering that she was also seeing another soldier in Plaintiff's unit. Plaintiff alleges:

---

[1] Plaintiff alleges that "around July - August of 1996 I enlisted into the United States Army (regular) and also into either the South Carolina National Guards or the Army Reserves." Statement of Claim, p. 1-of-15; ECF No. 1, p. 4. It appears that "1996" is an error and that Plaintiff intended to write "1986," because Plaintiff further alleges that he "reported to Ft. Jackson in Columbia, S.C. during January 1987," and "was ordered to Ft. Bliss Texas for basic training and reported there January - February 1987." *Id*. Elsewhere in his Statement of Claim, Plaintiff refers to other events which he alleges occurred in 1987 and 1988, while he was in the Army.

3

> [Plaintiff] was ordered to report to hospital for annual physical. X-rays and M.R.I. were performed. [Plaintiff] was then told that x-rays had revealed something inside [Plaintiff's] skull that would require surgery to remove. [Plaintiff] agreed to undergo surgery. [Plaintiff] can remember that criminal charges were filed against [him], then dismissed. Tonya Heaven was placed under a restraining order to keep her away from [Plaintiff].
>
> [Plaintiff] remain[s] confused regarding the passage of time but [he] know[s] [he] had cranial surgery performed most likely place being Irwin Army Community Hospital, Ft. Riley. [Plaintiff] awoke in the hospital with no memory of why [he] was there. [Plaintiff] do[es] not know how long [he] was in the hospital but [he] do[es] know that [he] went back on duty. It was a warm month when [Plaintiff] was released from the hospital. May or August 1988. [Plaintiff] keep[s] having flashes of [him]self and a friend working on a tank together during a record high temperature summer in Kansas. That flash-memory places [Plaintiff's] surgery before or after June - July. [Plaintiff] was released from the hospital and resumed regular duty.

Statement of Claim, p. 2-of-15 through 4-of-15; ECF No. 1, p. 5-7. Plaintiff alleges that he deployed with his unit to Europe during October 1988, and that he "re-enlisted [in] August-September 1988," before his unit returned to Ft. Riley in January 1989. Plaintiff alleges:

> [Plaintiff] returned to Ft. Riley and began a training course at Camp Forsythe-Ft. Riley in March 1989. It was near time to graduate and [Plaintiff] and McWhite or White were given a one hour pass to get our uniforms dry-cleaned for our graduation ceremony. On our way back to base a cab/taxi ran through a red light and struck the vehicle we were in head-on. [Plaintiff] can now recall that [Plaintiff's] head struck the stereo, the head-rest of [Plaintiff's] seat, and then the windshield. [Plaintiff] awoke sitting in a wrecked vehicle. [Plaintiff] got out and stood up. When asked if [Plaintiff] was alright, [Plaintiff] said yes, but was unaware that [his] scalp was scraped bloody. [Plaintiff] awoke in the hospital with no memory of how [he'd] gotten there. [Plaintiff] had already been stabbed and operated upon on that side (right-side) of [Plaintiff's] head less than a year earlier. [Plaintiff's] skull and memories were reinjured about March 31st, 1989.
>
> When [Plaintiff] awoke in the hospital Tonya Heaven was sitting at [Plaintiff's] bedside. [Plaintiff] sort of recognized her but couldn't place why. She said she was [Plaintiff's] wife. She was and is the female that stabbed [Plaintiff], and she was under a court ordered 1-mile radius restraining order. A doctor entered then and told [Plaintiff] [he'd] been poisoned and wanted to know who would want to poison [Plaintiff]. He left the room and [Plaintiff] must have dozed out.

> When [Plaintiff] awoke Tonya was pulling [Plaintiff] into a wheelchair. She was pushing [Plaintiff] out of the hospital and telling [Plaintiff] [they] had a son and one on the way. [Plaintiff] couldn't remember exactly but [Plaintiff] could catch a flash of a little boy named Edward, like [Plaintiff] or as [Plaintiff] [is] also named. Hospital security stopped [them] but only asked [Plaintiff] if [Plaintiff] wanted to leave with her. [Plaintiff] said yes and signed something. A waiver or release form [Plaintiff] suspect[s]. [Plaintiff] was not aware of [his] injuries, was suffering from amnesia, and freshly awake for the first time in [Plaintiff] do[esn't] know how long. [Plaintiff] was not mentally competent to decide to leave with the female who stabbed [Plaintiff], was under a restraining order and should not have been permitted into [Plaintiff's] hospital room where [Plaintiff] lay injured and unaware. [Plaintiff] suspect[s] that if [Plaintiff] had truly been poisoned and revived Tonya did the poisoning. [Plaintiff] continued to drift in and out of awareness and memory. If anyone was aware that the woman responsible for [Plaintiff's] memory damages and under a restraining order to stay 1-mile away from [Plaintiff], now had [Plaintiff] injured, drifting in and out of awareness, and in her home, they didn't come to [Plaintiff's] rescue.

Statement of Claim, p. 4-of-15 through 7-of-15; ECF No. 1, p. 7-10. Plaintiff further alleges:

> [Plaintiff] awoke one morning on [Plaintiff's] normal schedule, got dressed in uniform and reported to duty. [Plaintiff's] memory still had not recovered. [Plaintiff] was prone to fall asleep all of a sudden but persisted at doing [Plaintiff's] old duties. [Plaintiff] was taken before court-martial, falsely blamed for being absent without leave. [Plaintiff's] memory was uncertain at the time and [Plaintiff] had not received full treatment for [his] injuries, nor was [Plaintiff] aware of how badly [he] had been hurt. However, [Plaintiff] knew that [he] had not left without permission. In truth [Plaintiff] was not in a mental condition or mentally able to stand court-martial at that time. [Plaintiff] was released from duty and the Army. [Plaintif] departed from Kansas, and those things that had happened to [Plaintiff] there promptly faded from voluntary memory.

Statement of Claim, p. 7-of-15 through 8-of-15; ECF No. 1, p. 10-11. Plaintiff further alleges:

> [Plaintiff] discovered that [Plaintiff] ha[s] a crack that travels along the left-side of [Plaintiff's] nose up through the outer edge of [Plaintiff's] left eye socket to [Plaintiff's] eyebrow. [Plaintiff's] left eye moves in a stiff and sluggish manner, usually slightly slower than [Plaintiff's] right eye. The same delay is present in focusing. [Plaintiff] believe[s] that [he] sustained the crack and resulting eye injury in the car accident that [Plaintiff] never received full treatment for.
>
> The amnesia and memory or brain damage has gone untreated and unrevealed to [Plaintiff] for nearly twenty-six years. [Plaintiff] do[es] not know why the Army doctors decided not to tell [Plaintiff] that [he] had been stabbed, nor do[es] [Plaintiff] understand why they didn't tell [him] what was removed from [his] brain. [Plaintiff]

>had a right to know. [Plaintiff] do[esn't] know why [he] was not treated for memory loss after the surgery but the Army has a duty to provide care.
>
>After the car accident a person dangerous to [Plaintiff] was not only permitted to enter [Plaintiff's] hospital room while [Plaintiff] was unaware and defenseless, but possibly poisoned [Plaintiff], and was allowed to take [Plaintiff] from the hospital, before [Plaintiff] recovered from a reinjured brain. Security for injured soldiers is the hospital's duty. They failed to provide protection for [Plaintiff].
>
>[Plaintiff] should not have stood courts martial a month after sustaining head injuries to a head that had been cut into less than twelve months earlier, and memory loss that had not yet healed. [Plaintiff] most certainly should have received a medical discharge for the brain/memory damages that has demonstrated that it is long term if not permanent. [Plaintiff] should not have been permitted to endure ignorance and amnesia without treatment for twenty-five years. The United States Army has not fulfilled its duty to provide care for [Plaintiff].
>
>At present [Plaintiff] [is] unable to gain medical treatment at Veterans hospitals because the United States Army's records show that [Plaintiff] was in basic training in 1988, and did not enter the armed forces until October 1987. According to records, incomplete records, [Plaintiff] served less than 18 months in the U.S. Army. The V.A. hospitals say that [Plaintiff] had to serve at least 2 years to be eligible for treatment within their system. [Plaintiff's] G.I. Bill college fund has also been denied to [Plaintiff] because official records say [Plaintiff] served only 13 months. Those records are wrong. [Plaintiff's] medical records will show that [Plaintiff] was already stationed at Ft. Riley Kansas in 1988. Received treatment for a broken nose, swollen knuckles, and had brain surgery at Ft. Riley all during 1988. Someone within the over organized U.S. Army should have noticed that [Plaintiff's] medical and financial records place [Plaintiff] in Kansas for the years 1988-89, so that [Plaintiff] could not possibly have gone through basic and A.I.T. training at Ft. Bliss Texas in 1988. Their mistakes have cost [Plaintiff] medical care, $20,000.00 dollars in college funds, and twenty-six years of amnesia. [Plaintiff] had a bank account holding half [Plaintiff's] military pay for the time [he] had been in the Army. [Plaintiff] forgot it was there and ha[s] been unable to locate it since [his] memory resurfaced. [Plaintiff's] leave and earnings statement would have provided the account number and location, but [Plaintiff's] L.E.S. is one of the records the Army has yet to produce. Medical records being the other. At present [Plaintiff's] memory is still blurry in places, disorganized in others, blank in some and still partially prone to fade-outs.

Statement of Claim, p. 9-of-15 through 13-of-15; ECF No. 1, p. 12-16. Plaintiff asks this Court to grant the following relief:

> . . . to investigate into the length of time [Plaintiff] served with the U.S. Army and determine the correct term served and to order the U.S. Army to correct [Plaintiff's] records and associated benefits.
>
> [Plaintiff] ha[s] not been able to use [his] G.I. Bill for college because it is falsely recorded that [he] did not serve enough time in the army. [Plaintiff] ask[s] that [he] be awarded [his] G.I. Bill for college.
>
> [Plaintiff] ask[s] that the manner and nature of [his] discharge be reviewed to determine if [he] w[as] mentally competent to defend [him]self at courts martial, and if [his] discharge should have been medical.
>
> [Plaintiff is] suppose[d] to have a[n] honorable discharge from a two-year enlistment. [Plaintiff] ask[s] that this court seek into why [Plaintiff] do[es] not have a[n] honorable discharge on record and to order corrections made.
>
> [Plaintiff] ha[s] yet to be informed as to what was removed from [his] skull or to the results of the surgery the Irwin Army Hospital performed and seek[s] to have that information released to [Plaintiff].
>
> [Plaintiff] ha[s] never been informed as to the nature of the injuries and treatments [Plaintiff] received as a result of the car wreck[.] [Plaintiff] ask[s] this court to order that information released to [Plaintiff].
>
> For the untreated amnesia resulting from the brain surgery for the security lapse that allowed a dangerous person already responsible for injuring before, enter into the hospital, and take [Plaintiff] from the hospital unrecovered and partially treated, but suffering from memory/brain damage. For the twenty-six years of medical neglect and all the missed opportunities stemming therefrom or resulting. For the permanent damage to [Plaintiff's] left-eye, skull, and brain/memory. [Plaintiff] ask[s] this court to order the United States Army to pay $26,000,000.00 dollars to [him] in compensation and punitive damages.

Statement of Claim, Relief Requested, p. 13-of-15 through 15-of-15; ECF No. 1, p. 16-18.

## DISCUSSION

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of*

*Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 337 (1895)).  Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking*, 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Pinkley*, 191 F.3d at 399 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)).  To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]"  If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley*, 191 F.3d at 399 (citing 2 *Moore's Federal Practice* § 8.03[3](3d ed. 1997)).

Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  If the court, viewing the allegations in the light most favorable to Plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. *Id.*  In the instant case, Plaintiff's Complaint fails to allege sufficient facts to establish any plausible claim which falls within this court's subject matter jurisdiction.

Plaintiff's Complaint requests the following injunctive relief: the correction of his military records; an award of military benefits; a change of his military discharge status; and the release of medical information concerning his alleged hospitalization in a military hospital and any treatment

that he received for injuries allegedly sustained in an assault and in a separate automobile accident. Additionally, Plaintiff requests $26,000,000.00 in monetary damages for alleged medical negligence.

Plaintiff's claims for correction of his military records, an award of G.I. Bill benefits, and a change of his discharge status are appropriately construed as ones pursuant to the Tucker Act, 28 U.S.C. § 1491 and the Little Tucker Act, 28 U.S.C. § 1346.[2]  Under the Tucker Act,

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). Pursuant to its jurisdiction of such claims, the United States Court of Federal Claims has the authority to "provide an entire remedy" and, to complete the relief afforded by a judgment of the Court of Federal Claims, "the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2). The Court of Federal Claims has found that it has "explicit statutory authority" to provide money damages and/or equitable relief for complaints requesting "back pay, reinstatement, and correction of records." *Mitchell v. United States*, 930 F.2d 893, 895-96 (Fed. Cir. 1991); *see also Cook v. Arentzen*, 582 F.2d 870 (4th Cir. 1978); *Andrews v. Webb*, 685 F. Supp. 579 (E.D. Va.1988) (involving former marine officer's request for back pay). Under the Little Tucker Act, the Court of Federal Claims and the United States District Courts have concurrent original jurisdiction for non-tort monetary claims involving less than

---

[2]To the extent Plaintiff is seeking a review of a decision of the VA, this court lacks jurisdiction. *See* 38 U.S.C. § 511; 38 U.S.C. § 502 (judicial review to be made by Court of Appeals for the Federal Circuit).

$10,000.00. 28 U.S.C. § 1346(a)(2). However, under the Tucker Act, for claims in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction. 28 U.S.C. § 1491; *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996).

It is unclear from Plaintiff's allegations whether or not he is currently pursuing, or has ever properly pursued, a claim for the veterans' benefits he seeks in this case. Regardless of whether or not a VA claim has been pursued and rejected, this Court also has no jurisdiction to consider *as an original matter* any claim from such benefits. *Taylor v. United States*, 379 F. Supp. 642, 649-50 (W. D. Ark. 1974) (federal courts did not have authority to deal with subject of veterans benefits, either in an original suit or by way of reviewing VA action or inaction, except where facts disclose ground for constitutional attack).[3]

Plaintiff's claim for $26,000,000.00 "in compensation and punitive damages" for his "untreated amnesia resulting from the brain surgery" performed at the Army hospital, for his "permanent damage to [his] left eye, skull, and brain/memory," "for the security lapse that allowed

---

[3] Additionally, this court lacks jurisdiction to review a decision of the Department of Veteran's Affairs. *See* 38 U.S.C. § 511 (" . . . the decision of the Secretary as to any such question [about "provision of benefits by the Secretary to veterans or the dependents or survivors of veterans"] shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."); *Johnson v. Robison*, 415 U.S. 361, 370 (1974) (recognizing statute's dual purpose of insulating courts and VA from veterans' benefits litigation and of insuring uniform determinations of benefits and application of VA policy) (construing predecessor statute, 38 U.S.C. § 211(a)); *Tietjen v. U. S. Veterans Admin.*, 884 F.2d 514, 515 (9th Cir. 1989) (affirming district court dismissal under § 211(a) of challenge to benefits determination); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claims of fraud, conspiracy, and misrepresentation by VA officials properly construed as invalid court challenge to denial of veterans benefits; no subject matter jurisdiction); *Taylor v. United States*, 642 F.2d 1118, 1120 (8th Cir. 1981) (civil damage suit, the substance of claim is an attempt to obtain judicial review of the VA's denial of benefits claim and thereby circumvent the ban of Section 211(a) [now 511(a)] on judicial review; no subject matter jurisdiction).

a dangerous person to take [Plaintiff] from the hospital unrecovered and partially treated, but suffering from memory/brain damage," and "for the twenty-six years of medical neglect and all the missed opportunities stemming therefrom or resulting," is appropriately construed as a tort claim which falls under the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. § 2671 to 2680.

It is axiomatic that the United States cannot be sued without its express consent, and express consent is a prerequisite to a suit against the United States. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). To the extent that Plaintiff's Complaint seeks to pursue an FTCA claim against the United States Army, Defendant is entitled to summary dismissal on the basis of sovereign immunity. A suit under the FTCA lies only against the United States, and a federal district court lacks subject matter jurisdiction over claims asserted against federal agencies, departments or individual federal employees.[4] *See Sheridan v. Reidell*, 465 F. Supp. 2d 528, 531 (D.S.C. 2006); *Rice v. Nat'l Sec. Council*, 244 F. Supp. 2d 594, 599-600 (D.S.C. 2001), affirmed, 46 Fed. Appx. 212 (4th Cir. Sept. 24, 2002). The first step in the FTCA process is an administrative filing under 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Thus, an FTCA administrative claim must first be filed with the appropriate federal agency before commencement of a civil action against the United States in a district court. *See* 28 C.F.R. § 14.2;

---

[4] The FTCA waives the sovereign immunity of the United States in certain situations. Litigants must strictly comply with the requirements of the FTCA. *See* 28 U.S.C. § 2675; *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

the Standard Form 95; 28 U.S.C. § 2401(b) (a tort claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). Plaintiff makes no allegation that he submitted an FTCA claim to the U.S. Army Claims Service prior to filing this action. Because the FTCA is a waiver of sovereign immunity, careful compliance with procedural requirements – such as filing of the administrative claim – is not only mandatory but is also "jurisdictional and may not be waived." *Henderson v. U. S.*, 785 F. 2d 121, 123 (4th Cir. 1986); *see also Kielwien v. U. S.*, 540 F. 2d 676, 679 (4th Cir. 1976).[5]

## RECOMMENDATION

Accordingly, it is recommended that the Complaint in this case be summarily dismissed, *without prejudice and without issuance and service of process*. *See Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *Todd v. Baskerville*, 712 F.2d at 74; *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

Plaintiff's attention is directed to the important notice on the next page.

December 12, 2012  
Florence, South Carolina

 s/Thomas E. Rogers, III  
Thomas E, Rogers, III  
United States Magistrate Judge

---

[5] Additionally and alternatively, the *Feres* doctrine bars all suits on behalf of service members against the Government based upon service-related injuries. *United States v. Johnson*, 481 U.S. 681, 687-88 (1987); *Kendrick v. United States*, 877 F.2d 1201, 1203 (4th Cir. 1989) ("receipt of medical care in military facilities by members of the military on active duty is 'activity incident to service'"); *see also Appelhans v. United States*, 877 F.2d 309, 311 (4th Cir. 1989) ("The fact that [plaintiff's] injury occurred as a result of medical treatment by military doctors . . . conclusively demonstrates that that injury was 'incident to service.'").

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 2317
> Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).